**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPHERE 3D CORP., | Case No. _____ |
| *Plaintiff,* | |
| v. | **Jury Trial Demanded** |
| GRYPHON DIGITAL MINING, INC., | |
| *Defendant.* | |

**COMPLAINT**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................... 1

PARTIES ................................................................................................................................. 3

JURISDICTION & VENUE ..................................................................................................... 3

FACTUAL ALLEGATIONS .................................................................................................... 4

I.    BACKGROUND ON CRYPTOCURRENCY MINING ..................................................4

II.   IN ITS ROLE AS THE EXCLUSIVE PROVIDER OF MANAGEMENT SERVICES FOR SPHERE,
      GRYPHON MAINTAINED FOR SPHERE'S BENEFIT THE WALLET THAT CONTAINED SPHERE'S
      DIGITAL ASSETS .............................................................................................5

III.  ON OCTOBER 6, 2023, SPHERE TERMINATED THE MSA AND DEMANDED THE RETURN OF
      ITS ASSETS .....................................................................................................6

      A.    Sphere Terminated The MSA Based On Gryphon's Abhorrent Management Services,
            Gross Negligence, And Willful Misconduct................................................6

      B.    Upon Terminating The MSA, Sphere Demanded The Immediate Return Of Its Digital
            Assets.....................................................................................................9

IV.   GRYPHON ASSURED SPHERE IT WOULD RETURN SPHERE'S ASSETS—AND, DESPITE ITS
      REPEATED PROMISES, HAS NOT DONE SO ..........................................................9

CAUSES OF ACTION .......................................................................................................... 19

PRAYER FOR RELIEF ......................................................................................................... 21

Plaintiff Sphere 3D Corp. ("Sphere"), by and through its undersigned attorneys, respectfully submits this Complaint against defendant Gryphon Digital Mining, Inc. ("Gryphon").

## PRELIMINARY STATEMENT

1.      This is an action for conversion by Sphere to recover from Gryphon approximately $1.7 million in stolen assets.  For nearly half-a-year now, Gryphon through its counsel at Hogan Lovells has acknowledged that the assets belong to Sphere and assured Sphere that it would return them to Sphere.  Throughout, Sphere has displayed forbearance in the hope that Gryphon would adhere to its promises and transfer the assets without forcing Sphere to incur the expense and burden of litigation.  Gryphon, however, concocted disingenuous excuses to delay transferring the assets and disregarded promised deadlines to complete the transfer, including by way of example its recent promise to transfer the assets by February 23, 2024:

| | |
|---|---|
| **From:** | Tracey, Dennis H. |
| **To:** | Greg Wolfe; Carter, Elizabeth C; David Moosmann |
| **Cc:** | Winter, William; Rahul Srinivas |
| **Subject:** | RE: Sphere v Gryphon |
| **Date:** | Monday, February 19, 2024 12:10:42 PM |

Greg:  I think we will need no more than 10 minutes.

My client advises that he expects to complete the reconciliation and payment by the end of the week.  Will keep you posted.

Ex. 1 at 3.

2.      And also its recent promise to transfer the assets no later than March 8, 2024:

| | |
|---|---|
| **From:** | Tracey, Dennis H. |
| **To:** | Rahul Srinivas |
| **Cc:** | Carter, Elizabeth C; Winter, William; Greg Wolfe; David Moosmann |
| **Subject:** | RE: Sphere v. Gryphon |
| **Date:** | Wednesday, March 6, 2024 3:44:32 PM |

Rahul:  The client has advised it will complete the transfer by Friday COB.    Dennis

Ex. 2 at 4.

3.      After missing its March 8, 2024 deadline, Gryphon then promised to transfer the assets by March 13, 2024—but it missed that deadline too, without any explanation.  And Gryphon outright ignored a final deadline given by Sphere to transfer the assets by March 18, 2024.  Instead, in disregard of Sphere's express instruction, Gryphon dollarized Sphere's digital assets, which were denominated in bitcoin.  That move obscured Sphere's ability to monitor its assets, which were stored in a digital wallet (a repository similar to a bank account) controlled by Gryphon for Sphere's benefit (the "Wallet") that, although Sphere could not access, it could at least observe. Instead, Gryphon has now moved Sphere's money into its own accounts, where Sphere cannot monitor them.

4.      This is blatant, malicious theft and appears calculated to bolster Gryphon's balance sheet in its public filings with the U.S. Securities & Commission (the "SEC") with assets that Gryphon knows belong to Sphere, not it.  Indeed, it has become clear that Gryphon's promise to Sphere to transfer the assets to Sphere was nothing more than a pretext to delay Sphere from filing this litigation to make Gryphon look more attractive to its merger partner, Akerna Corp. ("Akerna").  Akerna and Gryphon have completed their merger, so now Gryphon has dispensed with the pretext and simply stolen Sphere's assets, betting that Sphere will not want to spend the resources to recoup the stolen funds.

5.      It is not the first time that Gryphon has employed such sharp tactics.  This action is related to *Sphere 3D Corp. v. Gryphon Digital Mining Inc.*, No. 23-cv-02954-PKC (S.D.N.Y.) (the "Related Action"), which Sphere filed in this Court on April 7, 2023.  As detailed in the Related Action, Gryphon breached its fiduciary duties to Sphere as well as its management services contractual obligations owed to Sphere under a Master Services Agreement dated August 19, 2021 (the "MSA," attached as Exhibit 3), as subsequently amended on December 29, 2021 (the "MSA

Amendment," attached as Exhibit 4).  In an act of pure retaliation designed to burden Sphere, Gryphon counterclaimed with claims of negligence, defamation, and breach of the implied covenant, and two breach of contract of counts.  There is no merit to these counterclaims—indeed, Gryphon voluntarily dismissed four of the claims rather than let them reach a decision on a motion to dismiss.

6.    Although there are many contested issues in the Related Action, there are no genuine disputes of material fact here: the assets in question belong to Sphere; Sphere has repeatedly demanded their return, only to be refused by Gryphon; Gryphon has interfered with Sphere's possession of its assets; and Gryphon has acted intentionally—in fact, it has acted maliciously, wantonly, and in bad faith.  Accordingly, Sphere intends to seek permission to move for summary judgment on its claims at the earliest possible opportunity and, if necessary, will seek an expedited trial on issues related to damages, including punitive damages.

## PARTIES

7.    Sphere 3D Corp. is a bitcoin mining company incorporated in Ontario, Canada, with its principal place of business in Ontario, Canada.  Unlike many mining companies, Sphere's operations are net carbon neutral.  Sphere is a publicly traded company whose securities have historically been dual listed in Canada and the U.S. and is currently listed for trading in the U.S. on the Nasdaq exchange.

8.    Gryphon Digital Mining, Inc. is a Delaware bitcoin mining company with its principal place of business in Las Vegas, Nevada.

## JURISDICTION & VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 exclusive of attorneys' fees

and costs and because complete diversity of citizenship exists, as Sphere is domiciled in Canada and Gryphon is domiciled in Nevada and Delaware.

10.     This Court has personal jurisdiction over this action pursuant to the forum selection clause of the MSA, which requires that "[a]ll disputes, suits, actions or proceedings relating to" the MSA "be brought solely in the state or federal courts located in the State of New York."  MSA at 4.  Personal jurisdiction is also proper here because Gryphon's agents at Hogan Lovells were based in New York at the time they made the below representations on behalf of Gryphon to Sphere's agents at Dontzin Nagy & Fleissig ("DNF"), who were also based in New York.

11.     Venue is also proper under the forum selection clause, which provides that: "Each party hereby consents to the exclusive jurisdiction and venue of the State of New York in connection with any such dispute, suit, action or proceeding, and waives any defense of *forum non conveniens* in connection therewith."  *Id.*  Venue is also proper here because a substantial part of the events or omissions giving rise to the claim occurred in New York.

## FACTUAL ALLEGATIONS

### I.    BACKGROUND ON CRYPTOCURRENCY MINING

12.     Sphere is in the business of "mining" for bitcoin.  Mining ensures that the payment network underlying bitcoin functions.  Through mining, companies generate new bitcoin for themselves and earn revenue through transaction fees.  To mine for bitcoin, mining companies use purchased or leased "miners," which are generally sophisticated, high-capacity computers that run programs designed to support the network underlying bitcoin.  Companies may direct their miners to participate in a "mining pool," which aggregates mining power attributable to multiple miners and typically pays out on a pro rata basis based on the company's contribution to the pool.  Not all

mining pools are created equal; selecting lucrative mining pools is critical to commercial success in the crypto-space.

13.     Hosting services for miners (*e.g.*, warehouse space, electricity, security, internet access, cooling, and so on) is a core component of digital asset mining.  Digital asset miners often turn to third parties for hosting services in exchange for fees, which can be among the most significant costs associated with digital asset mining.

14.     Cryptocurrency is stored in an individual's digital "wallet," which is akin to an online bank account.  A wallet is the primary mechanism for managing cryptocurrency balances and allows individuals and organizations to hold and control their cryptocurrency.

## II.     IN ITS ROLE AS THE EXCLUSIVE PROVIDER OF MANAGEMENT SERVICES FOR SPHERE, GRYPHON MAINTAINED FOR SPHERE'S BENEFIT THE WALLET THAT CONTAINED SPHERE'S DIGITAL ASSETS

15.     On August 19, 2021, Sphere and Gryphon entered into the MSA in contemplation of a merger that never closed.  The MSA was subsequently amended on December 29, 2021.

16.     Under the MSA, Gryphon undertook an obligation to be Sphere's "exclusive provider of any and all management services for all blockchain and cryptocurrency-related operations."  *Id.* at 1.  In return, Sphere promised to pay Gryphon a tremendous Management Fee equal to 22.5% of the "Net Operating Profit of all of [Sphere's] blockchain and cryptocurrency-related operations."  *Id.*  The Management Fee was exorbitant and meant that Sphere could expect commensurate service.

17.     In addition, the MSA made Gryphon a custodian of certain of Sphere's digital assets, which it maintains in the Wallet.  *Id.*  The MSA also required Gryphon to sell Sphere's digital assets upon Sphere's "instruction."  *Id* at 3.

18.     Accordingly, the proceeds of Sphere's mining operations generally went into the Wallet controlled by Gryphon, although Sphere had the ability to monitor the assets stored in the

Wallet.  In securities filings filed with the SEC, Gryphon acknowledged that it must "[s]ell and/or transfer the coins at the request of Sphere" and that Sphere "retains legal ownership of the cryptocurrency" and "has the right to sell, pledge, or transfer the cryptocurrency."  *See* Gryphon-Akerna Form S-4 Registration Statement dated May 11, 2023.[1]

19.    The MSA further required that Gryphon perform its services "in a professional and workmanlike manner in accordance with generally recognized crypto-mining industry standards for similar services" and not engage in "gross negligence, fraud or willful misconduct in connection with performing the Services."  MSA Amendment § 2.a.

20.    Finally, the MSA contains a prevailing party provision.  *See* MSA at 3.

**III.   ON OCTOBER 6, 2023, SPHERE TERMINATED THE MSA AND DEMANDED THE RETURN OF ITS ASSETS**

**A.    Sphere Terminated The MSA Based On Gryphon's Abhorrent Management Services, Gross Negligence, And Willful Misconduct**

21.    As detailed in the Related Action, Gryphon failed to live up to the contractual and fiduciary obligations it owed to Sphere, prompting Sphere to file suit against Gryphon on April 7, 2023.  On October 6, 2023—long after the filing of its initial Complaint and subsequent amended Complaint—Sphere terminated the MSA based on Gryphon's material breaches of the MSA, failure to perform its obligations under the MSA in a professional and workmanlike manner in accordance with generally recognized crypto-mining industry standards for similar services, and gross negligence and willful misconduct.  Sphere summarized some of the reasons for the termination in a letter to Gryphon dated October 6, 2023, including without limitation that:

- Gryphon "fell for multiple spoofing attacks targeting Sphere's digital assets," which led Gryphon to transfer over $400,000 in Sphere's digital assets to a third-party, an act that

---

[1] The securities filing was filed by Akerna, which has since merged with Gryphon.

Gryphon incredibly "claimed" Sphere was "responsible for." Related Action Compl. ¶¶ 5, 48; *see also id.* ¶¶ 6–11, 35–41.

- Gryphon failed to have industry-standard "internal controls systems and policies and procedures" in place that would have averted the spoofing attacks. *Id.* ¶ 5; *see also id.* ¶¶ 2, 11–12, 42–46.

- "[W]hen Sphere needed hosting space in 2022 (a prerequisite to turning on its miners and generating money), Gryphon refused to find hosting space and instead directed Sphere to find such space on its own." *Id.* ¶ 28; *see also id.* ¶ 3.

- When a shipment of Sphere's miners was seized by U.S. Customs, "Gryphon shirked its duties to provide the assistance and information needed to release the miners" despite "urgent pleas" from Sphere while the miners languished in U.S. Customs not generating revenues. *Id.* ¶ 29; *see also id.* ¶ 3.

- Gryphon "outright ignored instructions to sell Sphere's bitcoin on a timely basis." *Id.* ¶ 30.

- Gryphon "inexplicably delayed setting up mining pools, resulting in lost revenue." *Id.*

- "Gryphon . . . failed to review third-party invoices for accuracy, resulting in Sphere paying erroneous charges." *Id.*

- Gryphon engaged in self-dealing, "including by prioritizing the operations of its own miners over Sphere's and employing more advantageous mining pool strategies for its own digital assets," as evidenced by, among other facts, that "on a monthly basis, Gryphon has reported a substantially higher mining efficiency ratio than Sphere, which would not occur if Gryphon were acting to avoid self-dealing." *Id.* ¶ 34.

- "In general, Gryphon has been content to sit back and collect millions of dollars in Management Fees while delivering no services whatsoever." *Id.* ¶ 3; *see also id.* ¶¶ 27, 30.

- Gryphon failed to "manage relationships with third-parties." *Id.* ¶ 3; *see also id.* ¶ 30.

- "Gryphon has been skimming off the top—effectively stealing money—from Sphere." *Id.* ¶ 32; *see also id.* ¶¶ 2, 4.

- Gryphon unilaterally decided not to pay invoices for third-party hosts, leading to interruptions in services, costing Sphere tens of thousands of dollars in revenue, which Gryphon refused to reimburse Sphere for.

- Gryphon so poisoned a relationship with a mining pool provider that the provider stated that it intends to terminate its relationship with Gryphon—and also Sphere given its relationship to Gryphon—unless the parties addressed the issue with the provider, which Gryphon failed to do.

- Gryphon failed to file "a proof of claim in a pending bankruptcy proceeding in which Sphere has a substantial claim, jeopardizing Sphere's ability to pursue its claim because Gryphon interacted with the debtor on Sphere's behalf." Related Action Am. Compl. ¶ 36.

*See* Ex. 5 at 3, 6.

22.    As the letter also explained: "Gryphon's breaches and misconduct are incurable. Even if they were curable, Gryphon has been provided requisite written notice under the MSA and declined to cure its breaches despite an opportunity to do so. And even if Gryphon had not been provided requisite notice, it has indicated that it is unwilling to cure the issues identified in all events, obviating the need for further opportunity to cure in the first place." *Id.* at 1.

8

**B.    Upon Terminating The MSA, Sphere Demanded The Immediate Return Of Its Digital Assets**

23.    Sphere provides the foregoing reasons for the termination of the MSA for context; the salient fact in this Action is that the MSA was in fact terminated on October 6, 2023.  Despite the termination, Gryphon still maintained control of millions of dollars' worth of Sphere assets, including thousands of miners and the digit assets that existed in the Wallet.  The MSA did not provide a contractual roadmap for what should happen in the event the parties terminated the MSA, but Gryphon would plainly need to return Sphere's property to Sphere.

24.    Accordingly, Sphere demanded that Gryphon transfer all of Sphere's monies and digital assets to Sphere by no later than October 11, 2023.  *See id.* at 7.

25.    The Sphere miners under Gryphon's control were being hosted with third-party hosts.  It was Sphere's understanding that immediately retrieving its miners from Gryphon may cause Gryphon to breach certain contractual commitments related to maintaining threshold numbers of miners with at least one host and may create difficulties with another host. Accordingly, Sphere offered to "work with" Gryphon "on a rational way to handle Sphere's miners" to "provide for an orderly transition."  *Id.* at 8.  However, Sphere demanded that any proceeds generated by the miners in the interim flow into a wallet controlled by Sphere, not the Wallet controlled by Gryphon.  *Id.* at 7.

**IV.    GRYPHON ASSURED SPHERE IT WOULD RETURN SPHERE'S ASSETS—AND, DESPITE ITS REPEATED PROMISES, HAS NOT DONE SO**

26.    Gryphon initially completely ignored Sphere's demand to return the assets.  On October 16, 2023, Sphere sent a follow-up letter reiterating its demands, including to return the assets.  As Sphere explained: "Although Gryphon may disagree with the termination of the MSA, it must litigate any disagreement in Court.  What it cannot do is resort to self-help.  If Gryphon

does not comply with Sphere's instructions, Sphere will take all appropriate steps to protect itself, including without limitation asserting conversion claims against Gryphon."  Ex. 6 at 1.

27.     Nevertheless, Gryphon continued to refuse to engage with Sphere for more than a month following the termination of the MSA.  Despite Sphere's instruction to the contrary, Sphere's miners continued to send digital assets to the Wallet.  As Gryphon knew, it was vital to Sphere that it receive the assets during this period.  Because Sphere is publicly traded and discloses its financials, Gryphon knew that Sphere was on the verge of running out of cash on hand and that Sphere was at risk of missing its ordinary course obligations, including of paying for legal counsel in the Related Action and in significant litigation with a third-party, Core Scientific Inc. ("Core").  Every bitcoin for Sphere counted; yet Gryphon was starving Sphere of much needed assets.

28.     Finally, during a call on or around November 10, 2023, Gryphon, through its counsel at Hogan Lovells, assured Sphere through its counsel at DNF that Gryphon would promptly return the assets to Sphere upon the receipt of certain revenue information that Gryphon needed to calculate its 22.5% management fee for the period the MSA was effective.  Gryphon confirmed this understanding in a follow-up email dated November 13, 2023:

| From: | Bianchini, Allegra |
|---|---|
| To: | Rahul Srinivas; Greg Wolfe |
| Cc: | David Moosmann; Tracey, Dennis H. |
| Subject: | RE: Core/Sphere | Notices of Subpoena to Testify at a Deposition (Gryphon, R. Chang) |
| Date: | Monday, November 13, 2023 2:01:32 PM |

Greg and Rahul,

Thank you again for the conversation on Friday and thank you for sending the transcripts through. Below is our understanding of the agreed-upon next steps coming out of our conversation.

1. **Remittance of contents of wallet.** We will await your transmission of the profit information Gryphon needs in order to make the appropriate service fee deductions pursuant to the MSA. Upon receipt of that information, Gryphon will deduct all expenses and service fees, and remit the remainder of the proceeds to Sphere.

Ex. 7 at 3.

29.    The following day, Sphere provided the requested information.   As Sphere explained, "[t]here is no applicable fee for October 7 to the present" because the MSA had been terminated.   *See Id.* at 2.   Accordingly, Gryphon could immediately transfer any proceeds generated on and after October 7, 2023, because there would be no deduction for that period.   As such, Gryphon only needed to calculate its management fee for the proceeds generated from September 1, 2023, to October 6, 2023, when the MSA was still effective (Gryphon had already taken its management fee from before September 1, 2023).[2]   Although Gryphon already had sufficient information to calculate its September 2023 management fee, Sphere out of an abundance of caution provided invoices from third-party hosts to facilitate any calculation and ensure that Gryphon would not delay further.   *Id.*   That left only the management fee for the few days between October 1 and October 6, 2023, an extremely minor amount of money in the grand scheme.   Sphere did not yet have the invoice information needed to calculate the management fee for October 1 to October 6, 2023, but instructed Gryphon to:

- transfer the proceeds generated on and after October 7, 2023, for which there was no management fee associated;

- transfer the September 2023 proceeds minus the management fee, which were already by-and-large known; and

- transfer the October 1-6, 2023 proceeds, with the understanding that Sphere would immediately pay any management fee for that period once it became known.

*See id.*

---

[2] For the avoidance of doubt, and as Sphere made clear to Gryphon throughout, although it had agreed to pay the management fee, it was only doing so because it did not believe it was appropriate to resort to self-help.   Whether Gryphon can retain the management fee will need to await resolution of the Related Action.

30.    Whatever Gryphon's reservations about transferring the assets generated between October 1 and October 6, 2023, before the management fee was known for that period, there was no good reason that Gryphon could not comply with at least the first two instructions and transfer the bulk of the assets, which were generated in September 2023 and after October 7, 2023.  During follow-up telephonic conversations, Gryphon confirmed that its understanding matched Sphere's with respect to proceeds generated after October 7, 2023: it would take no fee.  Counsel for Gryphon further claimed that any transfer would happen expeditiously and in all events by year-end.  Accordingly, Sphere relied on the assurance and, given its limited resources, resolved to hold off on any suit to recover the assets despite its precarious financial position.

31.    Nevertheless, by December 11, 2023, Gryphon had still not returned Sphere's property.  On December 11, 2023, Sphere through its counsel asked Gryphon for an "update on timing," as "[w]e really need to get a date certain."  *Id.* at 1.  After hearing no response, Sphere's counsel on December 12, 2023 again asked for an update and instructed that that "the transfer occur in bitcoin rather than cash"—in other words, Gryphon was not to dollarize the bitcoin.  *Id*.  When done properly, transferring bitcoin between wallets is simple, fast, and safe, and avoids transaction costs.

32.    During a December 13, 2023 phone call, Gryphon's counsel informed Sphere's counsel that Gryphon would no longer assure Sphere that the transfer would occur by year-end.  However, Gryphon's counsel represented that the transfer would occur by early January 2024, at the latest.  Gryphon's counsel offered no reason for the delay.  Although Gryphon had put Sphere in a bind given its liquidity crunch, Sphere again resolved not to file suit to avoid wasting preciously thin resources.

33.    Early January 2024 came and went and still Gryphon had not returned the proceeds. On January 5, 2024, Sphere through counsel again asked Gryphon to "please advise when Gryphon will be returning Sphere's proceeds, which it is presently holding and which you represented would be returned." Ex. 8 at 3. As Sphere's counsel also stated: "While Sphere has been patient here, Gryphon has had no right to hold the proceeds and our forbearance has run out." *Id.*

34.    Now, on January 11, 2024, Gryphon through counsel for the first time in months claimed that its failure to transfer the proceeds was attributable to insufficient information. *Id.* at 1. According to Gryphon, it otherwise "ha[d] been ready to complete remittance for weeks." *Id.* To that end, Gryphon claimed that it was missing certain invoices covering the October 1– 6, 2023 period and one invoice covering September 2023. *Id.* at 2.

35.    On January 15, 2024, Sphere through counsel responded by providing the requested information even though it was its "understanding" that "Gryphon already has much, if not all of this" information. *Id.* at 1. Moreover, as Sphere's counsel noted, "whatever needed to be withheld before October 6, 2023 does not explain the failure to remit proceeds after October 6, 2023." *Id.* Nevertheless, Sphere's counsel asked that Gryphon provide "a date certain by which Sphere will receive the proceeds and also inform us immediately if you contend you still need more information from Sphere." *Id*. Again, Sphere held off on filing suit in the hope that Gryphon would transfer the assets.

36.    Nevertheless, Gryphon continued to delay for more than a month, during which it did not contend it required any additional information to effect the transfer. On January 22, 2024, Sphere through its counsel wrote to Gryphon's counsel: "Please advise when your client will be transferring the proceeds or if it contends it still needs more information before it engages in the

transfer. As it stands, this is simply blatant conversion. I'd really rather avoid spending both sides' money on dealing with this in court, if possible." Ex. 9 at 1.

37.     Hearing no response, on February 8, 2024, Sphere through its counsel wrote to Gryphon: "can you please answer my question, reiterated numerous times, regarding when Gryphon will be returning the proceeds? I have not heard any contention that Gryphon requires further information to calculate its fees from pre-October 6, 2023 and there has never been an argument that anything prevented Gryphon from transferring the proceeds post-October 6, 2023." Ex. 10 (February 8–9, 2024 email correspondence) at 1. Sphere through its counsel further advised that "the only conclusion to be drawn is that this is pure, bad faith theft" and warned that "[i]f we have to bring an action for conversion, we will be seeking punitive damages." *Id*. at 2.

38.     In response, counsel for Gryphon continued to delay, claiming that he still needed to hear back from his client on the issue, who he claimed was busy. *See id.* at 1. The claim is simply not credible; instead, Gryphon was stalling. By February 8, 2024, Sphere's demand that Gryphon return the proceeds had been pending for *five months*. Moreover, although Gryphon was apparently too busy to consult with its lawyer about returning Sphere's assets, it had enough time to review Sphere's motion to dismiss in the Related Action, consult with its attorneys, and make the considered decision to "instruct[]" its attorneys "to discontinue the claims subject to the motion to dismiss with prejudice," as reflected below:

> **From:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>
> **Sent:** Friday, February 9, 2024 12:20 PM
> **To:** Greg Wolfe <greg@dnfllp.com>
> **Cc:** Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Winter, William
> <william.winter@hoganlovells.com>; Rahul Srinivas <rsrinivas@dnfllp.com>; David Moosmann
> <dmoosmann@dnfllp.com>
> **Subject:** RE: Sphere Motion to Dismiss
>
> Greg:  Our client has instructed us to discontinue the claims subject to the motion to dismiss with
> prejudice.  Attached is a proposed stipulation.  Please sign and return it, or let me know if you have
> any comments.
>
> We have reached out to our client on the return of the proceeds and will report back when we
> obtain any information.  I understand that the client closed a transaction yesterday, so it may be
> next week before we hear back.

*Id.*

39.     During this time period, Gryphon was involved in merger negotiations with a third-party, Akerna.  It appears that Gryphon's true goal was to delay any lawsuit to recoup the digital assets until after the merger had closed.  Although Sphere does not know what information Gryphon disclosed to Akerna during the merger process, it is plausible that it reflected Sphere's assets as its own in order to boost its attractiveness.

40.     Nearly two weeks later, Gryphon still had not returned the assets.  On February 19, 2024, Sphere through its counsel sought to set a deadline of February 23, 2024, for the transfer of the assets and also reiterated that any suit would seek punitive damages given the bad faith conduct at issue and that any transfer must be in bitcoin, as reflected below:

| | |
|---|---|
| **From:** | Greg Wolfe |
| **To:** | Carter, Elizabeth C; David Moosmann |
| **Cc:** | Tracey, Dennis H.; Winter, William; Rahul Srinivas |
| **Subject:** | RE: Sphere v Gryphon |
| **Date:** | Monday, February 19, 2024 10:02:22 AM |

Separately, I am writing for the last time on the return of the proceeds of the issue.  The record is clear here.  If we do not have the bitcoin in our possession by EOD Friday (and, to be clear, Gryphon should transfer the bitcoin to Sphere and not convert it to cash), we are going to proceed with a suit that seeks punitive damages and ask the Court for permission to move for summary judgment expeditiously, as there are no material issues of fact in dispute.  Instead, we will only seek discovery on the question of punitive damages.  We will also seek to hold Gryphon responsible for any decline in the price of bitcoin should one occur.

Ex. 1 at 4.

41.     That same day, Gryphon's counsel responded: "My client advises that he expects to complete the reconciliation and payment by the end of the week"—*i.e.*, by February 23, 2024. *Id.* at 3.

42.     Nevertheless, on February 22, 2024—the day before the contemplated transfer— Gryphon's counsel claimed that Gryphon was still missing an invoice needed to calculate the September 2023 management fee. *Id.* at 2.  This was a canard: as Sphere's counsel quickly pointed out, Sphere had provided that invoice *in November 2023*. *Id.* at 1.  Later that day, Sphere's counsel had a call with Gryphon's counsel during which Gryphon's counsel again represented that Gryphon would promptly return Sphere's property.

43.     It was not to be.  On February 23, 2024, Gryphon through its counsel requested yet more information that it claimed it needed to calculate its September 2023 management fee. *Id.* at 1.  It did not transfer the assets, as promised.

44.     Although Sphere disagreed that Gryphon needed the information, Sphere elected to continue to work in good faith with Gryphon in the hope of avoiding this lawsuit.  On February

26, 2024, Sphere's counsel provided the requested information.  *Id*.  It further asked again if there was any other information Gryphon contended it needed before effecting the transfer.  *Id*.  Hearing nothing, on February 28, 2024, Sphere's counsel repeated the question.  Ex. 2 at 8–9.

45.    The following day, on February 29, 2024, Sphere demanded that the transfer be completed by no later than March 1, 2024.  As Sphere's counsel wrote: "We have now asked multiple times if Gryphon requires more information and based on the silence can only conclude that it does not." *Id.* at 7.

46.    On March 1, 2024, Gryphon's counsel now chose to respond by claiming that Gryphon *still did not have sufficient information*, namely, certain revenue information for September 2023.  *Id*.  According to counsel: "Once you provide complete information for September, Gryphon will be in a position to calculate its fee and transfer funds to Sphere, but until Sphere does so, there is no way for Gryphon to complete the necessary calculations."  *Id*.  This was yet another canard: in fact, Sphere's counsel had already provided the requested revenue information to Gryphon's counsel, most recently on February 26, 2024.  After pointing that out, counsel for Sphere noted that "[t]he fact that Gryphon continues to claim it does not have the information it has requested confirms that it is proceeding in bad faith . . . . We reiterate our demand that the transfer be completed today.  If it is not, we will file suit next week." *Id.* at 6.  Gryphon's counsel did not respond.

47.    On March 4, 2024, Gryphon's counsel came up with a new excuse: he claimed that Gryphon was "trying to complete the calculation" but required clarification regarding revenue data.  He represented that once the clarification was provided, Gryphon would "complete the calculations and provide the refund."  *Id*.  Sphere's counsel provided the requested clarification that same day, writing: "[t]hat should resolve everything and permit Gryphon to at last remit the

proceeds by no later than EOD tomorrow.  If you disagree, please let us know by noon tomorrow." *Id.* at 5.

48.    Gryphon's counsel did not disagree.  Accordingly, on March 5, 2024, Sphere's counsel wrote to Gryphon's counsel: "[g]iven that we did not hear from you by noon, and have heard no reason to believe otherwise, we expect that the transfer will be completed by EOD today." *Id.*

49.    In response, on March 6, 2024, Gryphon's counsel wrote to advise that the transfer would be completed no later than March 8, 2024:

| | |
|---|---|
| **From:** | Tracey, Dennis H. |
| **To:** | Rahul Srinivas |
| **Cc:** | Carter, Elizabeth C; Winter, William; Greg Wolfe; David Moosmann |
| **Subject:** | RE: Sphere v. Gryphon |
| **Date:** | Wednesday, March 6, 2024 3:44:32 PM |

Rahul:  The client has advised it will complete the transfer by Friday COB.    Dennis

*Id.* at 4.

50.    Yet by March 8, 2024, Gryphon had not taken the expected steps to complete the transfer, such as confirming wire instructions with Sphere.  Sphere's counsel pointed that out and asked Gryphon's counsel "to confirm that the transfer will occur today."  *Id.* at 3.  Perhaps needless to say, the transfer did not occur.

51.    On March 10, 2024, counsel for Sphere advised counsel for Gryphon that "the transfer did not occur" and that Sphere "will be raising this with the court this week and will seek to move for summary judgment at the earliest possible point."  *Id.*  Gryphon's counsel simply responded that the transfer "is in process."  *Id.*  In response to yet another demand for a date certain by which the transfer would occur, Gryphon's counsel responded it would take a "couple of days"—*i.e.*, it would be done by March 13, 2024.  *See id.* at 2. Sphere's counsel confirmed that understanding and further reiterated any transfer should be in bitcoin.  *Id.* at 1.

52.     Rather than complete the transfer, Gryphon removed the bitcoin from the Wallet—where Sphere could at least monitor its assets—and dollarized it, without Sphere's consent, for approximately $1.7 million.  Since dollarizing the bitcoin, Gryphon transferred the money into its own account and has taken no steps that Sphere is aware of to complete the transfer.  As a result, Sphere can no longer monitor its assets, which appear to have been outright stolen by Gryphon.  On March 15, 2024, Sphere gave Gryphon one last chance to return its assets by March 18, 2024—*i.e.*, yesterday.  *Id.*  Gryphon's counsel did not respond at all.

53.     As the foregoing demonstrates, Gryphon has been proceeding maliciously, wantonly, and in bad faith.  It has slow played the entire process and will never return Sphere's assets unless compelled to do so by the Court.  Instead, it appears that it will use the assets to bolster its own balance sheet while depriving Sphere of its funds.

## CAUSES OF ACTION

### COUNT I
### CONVERSION

54.     Sphere repeats and re-states the allegations above as if fully set forth herein.

55.     This is a claim for conversion against Gryphon.

56.     The digital assets stored described above, which have since been converted into approximately $1.7 million, are the property of Sphere.

57.     Sphere has repeatedly demanded their return, including as early as October 6, 2023.

58.     Gryphon has willfully interfered with Sphere's rights to its assets, including by refusing to return Sphere's digital assets, converting them into dollars, and refusing to return the dollars to Sphere.

59.     Gryphon acted intentionally—in fact, it acted maliciously, wantonly, and in bad faith.

60.     Sphere is entitled to damages in an amount to be proven at trial, but in all events in excess of $75,000, exclusive of interest and costs.

## COUNT II
## PROMISSORY ESTOPPEL

61.     Sphere repeats and re-states the allegations above as if fully set forth herein.

62.     This is a claim for promissory estoppel against Gryphon.

63.     Gryphon promised Sphere that it would return Sphere's property.

64.     Sphere reasonably relied on Gryphon's promise to return Sphere's property, including in forestalling any claim.

65.     As a result, Sphere has been injured by the delay in recovering its assets.

66.     Sphere is entitled to damages in an amount to be proven at trial, but in all events in excess of $75,000, exclusive of interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Sphere respectfully requests that the Court award the following relief:

(1)    All damages to which Sphere is entitled, including, without limitation, compensatory and punitive damages, in an amount to be determined at trial;

(2)    All pre- and post-judgment interest to which Sphere is entitled;

(3)    All costs and expenses (including, without limitation, attorney's fees) to which Sphere is entitled; and

(4)    All other such relief as the Court may deem just and proper under the circumstances.

Dated:      March 19, 2024
            New York, NY


                        **DONTZIN NAGY & FLEISSIG LLP**

                        *Gregory N. Wolfe*
                        _____
                        Tibor L. Nagy, Jr.
                        Gregory N. Wolfe
                        Rahul Srinivas (pro hac vice forthcoming)
                        David Moosmann (pro hac vice forthcoming)
                        31 East 62nd St.
                        New York, NY 10065
                        Tel: 212-717-2900
                        tibor@dnfllp.com
                        greg@dnfllp.com
                        rsrinivas@dnfllp.com
                        dmoosmann@dnfllp.com


                        *Counsel for Sphere 3D Corp.*