# Exhibit 5

# DONTZIN NAGY & FLEISSIG LLP

980 Madison Avenue | New York, New York 10075 | (212) 717 - 2900

Gregory N. Wolfe
greg@dnfllp.com

**VIA EMAIL**

October 6, 2023

Brian D. Koosed, Esq.
Brian.Koosed@klgates.com

Re:   **Termination of Master Services Agreement Dated August 19, 2023**

Dear Brian:

As you know, this firm represents Sphere 3D Corp. ("Sphere").  We write to inform you that Sphere has terminated the Master Services Agreement dated August 19, 2023 (the "MSA"), as subsequently amended, between Gryphon Digital Mining, Inc. ("Gryphon") and Sphere.  *See* Ex. 1.

The reasons for the termination have been exhaustively catalogued in the correspondence between the parties and the pleadings filed by Sphere in the current litigation between the parties, *Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, 23-cv-02954 (S.D.N.Y.) (the "Litigation").  We will not recount all of those reasons now, although provide a summary below.

In brief, Gryphon has materially breached the MSA, failed to perform its obligations under the MSA in a professional and workmanlike manner in accordance with generally recognized crypto-mining industry standards for similar services, and engaged in gross negligence and willful misconduct in connection with performing its obligations under the MSA.  Gryphon's breaches and misconduct are incurable.[1]  Even if they were curable, Gryphon has been provided requisite written notice under the MSA and declined to cure its breaches despite an opportunity to do so.  And even if Gryphon had not been provided requisite notice, it has indicated that it is unwilling to cure the issues identified in all events, obviating the need for further opportunity to cure in the first place.[2]

In the remainder of this letter, we set forth facts that are not reasonably in dispute regarding the termination of the MSA and provide you with instructions regarding next steps.

---

[1] *See Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014) ("New York common law will not require strict compliance with a contractual notice-and-cure provision if providing an opportunity to cure would be useless, or if the breach undermines the entire contractual relationship such that it cannot be cured.").

[2] *See Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 482 (E.D.N.Y. 2020) ("The Court finds that enforcing strict compliance with the notice-and-cure provision would be useless with respect to the alleged error in this case, given that Defendant was aware of the charges and insists that the overdraft fees are not, in fact, errors."); *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 552 n.6 (S.D.N.Y. 2014) (holding that plaintiff did not need to comply with notice provision because bank was aware of the alleged breach and refused to correct it).

### I. THE MSA EXPRESSLY PROVIDED THAT SPHERE COULD TERMINATE THE MSA IF GRYPHON FAILED TO MEET INDUSTRY STANDARDS OR ENGAGED IN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT

Under the MSA, Gryphon undertook an obligation to be Sphere's "exclusive provider of any and all management services for all blockchain and cryptocurrency-related operations." Ex. 1 at 1. In return, Sphere promised to pay Gryphon a tremendous management fee equal to 22.5% of the "Net Operating Profit of all of [Sphere's] blockchain and cryptocurrency-related operations." *Id.*

In addition, the MSA made Gryphon a custodian of certain of Sphere's digital assets, which it maintains in a wallet. *Id.* at 2. The MSA also required Gryphon to sell Sphere's digital assets upon Sphere's "instruction." *Id.* at 3.

The MSA also included a termination provision that provided as follows:

> Subject to written notice from Customer and an opportunity by Provider to cure for a period of up to one hundred eighty (180) day, Customer shall be entitled to terminate the Agreement in the event of: (i) Provider's failure to perform the Services in a professional and workmanlike manner in accordance with generally recognized crypto-mining industry standards for similar services, or (ii) Provider's gross negligence, fraud or willful misconduct in connection with performing the Services.

*Id.* at 6.

### II. SPHERE PROVIDED NOTICE OF GRYPHON'S MATERIAL BREACHES, GROSS NEGLIGENCE, AND WILLFUL MISCONDUCT MORE THAN SIX MONTHS AGO, INCLUDING THROUGH ITS COMPLAINT DATED APRIL 7, 2023

For more than 180 days, Sphere has raised issues with Gryphon's performance under the MSA. By way of example, Sphere through extensive email correspondence in February 2023 raised concerns to Gryphon when Gryphon fell for multiple spoofing attacks, leading Gryphon to transfer well over $400,000 in Sphere's digital assets to an unauthorized third-party.

As another example, on March 22, 2023, Sphere through counsel sent Gryphon a letter in which it reiterated its concerns over the spoofing attacks as well as other violations of the MSA, including without limitation that Gryphon had been stealing Sphere's assets, did not have adequate internal controls and policies and procedures in place, had refused to find hosting space for Sphere, had shirked its duties in securing the release of Sphere's miners, delayed setting up mining pools, ignored instructions to sell bitcoin, and failed to review third-party invoices for accuracy. *See* Ex. 2.

And on April 7, 2023, Sphere filed its Complaint in the Litigation. In the Complaint, Sphere made clear that Gryphon had materially breached the MSA, failed to perform in line with

industry standards, and engaged in gross negligence and willful misconduct, including without limitation as follows:

- Gryphon "fell for multiple spoofing attacks targeting Sphere's digital assets," which led Gryphon to transfer over $400,000 in Sphere's digital assets to a third-party, an act that Gryphon incredibly "claimed" Sphere was "responsible for." Compl. ¶¶ 5, 48; *see also id.* ¶¶ 6–11, 35–41.

- Gryphon failed to have industry-standard "internal controls systems and policies and procedures" in place that would have averted the spoofing attacks. *Id.* ¶ 5; *see also id.* ¶¶ 2, 11–12, 42–46.

- "[W]hen Sphere needed hosting space in 2022 (a prerequisite to turning on its miners and generating money), Gryphon refused to find hosting space and instead directed Sphere to find such space on its own." *Id.* ¶ 28; *see also id.* ¶ 3.

- When a shipment of Sphere's miners was seized by U.S. Customs, "Gryphon shirked its duties to provide the assistance and information needed to release the miners" despite "urgent pleas" from Sphere while the miners languished in U.S. Customs not generating revenues. *Id.* ¶ 29; *see also id.* ¶ 3.

- Gryphon "outright ignored instructions to sell Sphere's bitcoin on a timely basis." *Id.* ¶ 30.

- Gryphon "inexplicably delayed setting up mining pools, resulting in lost revenue." *Id.*

- "Gryphon . . . failed to review third-party invoices for accuracy, resulting in Sphere paying erroneous charges." *Id.*

- Gryphon engaged in self-dealing, "including by prioritizing the operations of its own miners over Sphere's and employing more advantageous mining pool strategies for its own digital assets," as evidenced by, among other facts, that "on a monthly basis, Gryphon has reported a substantially higher mining efficiency ratio than Sphere, which would not occur if Gryphon were acting to avoid self-dealing." *Id.* ¶ 34.

- "In general, Gryphon has been content to sit back and collect millions of dollars in Management Fees while delivering no services whatsoever." *Id.* ¶ 3; *see also id.* ¶¶ 27, 30.

- Gryphon failed to "manage relationships with third-parties." *Id.* ¶ 3; *see also id.* ¶ 30.

- "Gryphon has been skimming off the top—effectively stealing money—from Sphere." *Id.* ¶ 32; *see also id.* ¶¶ 2, 4.

Gryphon has generally conceded in Court, as it must, that it has notice of the allegations against it, including by, with few exceptions, not moving to dismiss the breach of contract allegations and instead answering them.[3]

### III. RATHER THAN ATTEMPT TO CURE ITS BREACHES, GROSS NEGLIGENCE, AND WILLFUL MISCONDUCT, GRYPHON HAS DENIED IT ENGAGED IN ANY BREACH OR MISFEASANCE AT ALL

At no point since Sphere sent its March 22, 2023 letter or filed its April 7, 2023 Complaint has Gryphon attempted to cure, or even acknowledged, its breaches, gross negligence, or willful misconduct. To the contrary, Gryphon has categorically *denied* that it has engaged in any breach or misfeasance or otherwise failed to meet industry standards. It has also engaged in ostrich behavior, denying it has notice of the issues raised despite its concession in Court that it in fact has notice.

For example, on May 6, 2023, Sphere wrote to Gryphon that it viewed the issues raised in the Complaint "as non-curable given the pattern of gross misfeasance," but invited Gryphon to cure if possible:

> If Gryphon contends that its misfeasance is curable, please let us know as soon as possible and set forth, in detail, a remediation plan, including how Gryphon plans to compensate Sphere for its past misconduct. We will otherwise proceed under the assumption that Gryphon has no intention of even attempting to cure its misfeasance.

Ex. 3 at 1. Gryphon's CEO responded in no uncertain terms that Gryphon did not intend to cure any breach, stating: "Gryphon hasn't breached the parties' MSA in any way, so I don't think there's anything for Gryphon to 'cure' here. Nor do I think such imagined breaches give Sphere any legitimate basis to terminate the MSA." Ex. 4 at 1.

Although under no obligation to do so, on May 30, 2023, Sphere sent Gryphon a letter in which it proposed ways Gryphon could cure at least some of its misconduct, including without limitation by:

- compensating Sphere for historical breaches of the MSA;

- dropping any claim that Sphere was liable for the spoofing attack;

- promptly complying with written instructions to sell digital assets and remit the proceeds therefrom to Sphere;

---

[3] Gryphon has argued that the theft allegations do comply with the particularity requirements of Rule 9(b) but does not dispute that they meet the notice standard under Rule 8(a). Gryphon accordingly has conceded it has notice of the theft issue too.

- disclosing Gryphon's internal controls and procedures to Sphere and updating them so that they complied with industry standards; and

- providing certain other information needed to assess requisite remediation.

Ex. 5.  On June 6, 2023, Gryphon responded by sticking its head in the sand, claiming that Sphere still had not provided any detail about its concerns regarding Gryphon's performance or how they could be addressed.  *See* Ex. 6.  Sphere reflected this state of affairs in its Amended Complaint filed on June 15, 2023, averring:

> Since Sphere filed this lawsuit, Gryphon has confirmed that is incapable of addressing its issues and performing under the MSA, both because the breaches are incurable and because Gryphon is simply unwilling to remedy its breaches.  Indeed, since Sphere filed its lawsuit, Gryphon has denied breaching any of its obligations.  And incredibly, Gryphon has denied that Sphere has given it sufficient specificity to know what its material breaches of the MSA are. It has done so *even though Gryphon has conceded that Sphere breach claims are sufficient to state a claim and thus inherently gave it reasonable notice of the allegations against it*.
>
> This is part-and-parcel of Gryphon's general ostrich strategy:  accept exorbitant fees, play dumb regarding what services should be delivered.  What Gryphon should have done to not breach the MSA is obvious.  By way of example only, rather than direct Sphere to find hosting, Gryphon should have found hosting for Sphere. Rather than allow Sphere's miners to languish in U.S. Customs, depriving Sphere of millions of dollars in revenue, Gryphon should have provided the information needed to secure their release—which Sphere ultimately had to do itself.  Rather than failing to properly review vendor invoices, Gryphon should have ensured that Sphere is only charged for what is owed. Rather than falling for transparent spoofing attacks that led Gryphon to part with Sphere's assets, Gryphon should have detected the attack—and should have compensated Sphere for the loss without reservation, instead of asserting that Sphere is responsible and threatening litigation. Rather than refusing to honor written instructions to sell Sphere's digital assets, Gryphon should comply.

Am. Compl. ¶¶ 75–76 (emphasis in original).  Nevertheless, even after this filing, Gryphon doubled down, asserting it did not understand the claimed breaches and offering no effort to rectify any of the issues raised.  *See* Ex. 7 (June 22, 2023 Letter from Gryphon); Ex. 8 (June 23, 2023 Response from Sphere).

To the extent there was any doubt about Gryphon's position, on August 18, 2023, Gryphon filed its Answer in the Litigation in which it, among other denials, categorically "denie[d] that [it] ha[d] breached any contract with Sphere." Answer ¶ 1. Accordingly, there can be no doubt that Gryphon has not cured any of its misfeasance—in fact, it did not even attempt to do so.

IV.  **EVEN AFTER SPHERE FILED ITS INITIAL COMPLAINT, GRYPHON ENGAGED IN ADDITIONAL MISFEASANCE THAT IT REFUSED TO CURE**

Even after Sphere filed its initial Complaint, Gryphon continued engaging in misfeasance that it stated it would not cure, which provides additional grounds for termination. The misfeasance was designed to induce Sphere to drop the Litigation.

By way of example only, in August 2023, Gryphon unilaterally decided that it would not pay invoices for third-party hosts Rebel Mining Co. ("Rebel") and Lancium. The result was that Sphere went into default on its obligations and Rebel shut down Sphere's miners, costing Sphere around $60,000.[4] On September 1, 2023, Sphere demanded that Gryphon make Sphere "whole" by compensating it for the loss. *See* Ex. 10. On September 6, 2023, Gryphon stated it would not do so and thus not cure its breach of the MSA. *See* Ex. 11.

As another example, Gryphon so poisoned a relationship with a mining pool provider, Foundry Digital ("Foundry"), that Foundry stated that it intends to terminate its relationship with Gryphon—and also Sphere given its relationship to Gryphon. Although Sphere requested that Gryphon address the issue, Gryphon has refused to do so. *See* Ex. 12 (June 23, 2023 Email from G. Wolfe), Ex. 13 (June 23, 2023 Email from P. Trompeter).

As for other examples, "Gryphon failed to file a proof of claim in a pending bankruptcy proceeding in which Sphere has a substantial claim, jeopardizing Sphere's ability to pursue its claim because Gryphon interacted with the debtor on Sphere's behalf." Am. Compl. ¶ 36. And Gryphon ceased honoring Sphere's written instructions "to sell digital assets" in an attempt "to put Sphere in a position where Sphere cannot meet its ordinary course obligations and where it cannot pay for the expenses and costs associated with this litigation so that Sphere will be forced to capitulate." *See* Am. Compl. ¶¶ 68–73. Gryphon denied any culpability for these issues and made clear it would not even attempt to cure them, which it did not. *See generally* Answer.

V.  **BY NOT SEEKING A TEMPORARY RESTRAINING ORDER IN ADVANCE OF SPHERE TERMINATING THE MSA, GRYPHON HAS CONCEDED IT WILL NOT SUFFER IRREPARABLE HARM ONCE THE MSA IS TERMINATED**

On September 14, 2023, Gryphon informed Sphere of its belief that it would suffer some sort of undescribed irreparable harm if the MSA were cancelled and stated its intention to file a temporary restraining order preventing Sphere from terminating the MSA absent Sphere providing what it deemed to be requisite notice under the MSA. *See* Ex. 14. Gryphon indicated that it needed

---

[4] This was not the first time that Gryphon arbitrarily indicated it would not pay Rebel: in May 2023, Gryphon threatened to not pay Rebel and only relented when Sphere threatened to seek emergency relief. *See* Ex. 9 (May 23, 2023 Email from P. Trompeter).

to move before Sphere terminated the MSA to avoid the irreparable harm. *See id.* at 4 ("Please take further notice that, unless Sphere is willing to agree to a notice of motion process -- and to defer any purported termination of the MSA pending the outcome of that process -- Gryphon intends to make its motion by order to show cause, given the emergency nature of this situation and, particularly, Monday's impending deadline.").

The notion that Gryphon could be entitled to emergent relief on this record was without merit, as Sphere explained. *See id.* at 3. Aside from the fact that Gryphon would not be able to demonstrate a substantial likelihood on the merits (as the foregoing amply demonstrates), there was also no conceivable way Gryphon could prove irreparable harm over the termination of the MSA, through which the benefits Gryphon derives are purely economic.

As it turned out, Gryphon was posturing and recognized it would not be able to obtain emergent relief. Sphere agreed to commit to not terminating the MSA for a period to allow the parties to try to find a consensual resolution. On October 3, 2023, however, with no resolution in sight, Sphere informed Gryphon that it would no longer commit to not terminating the MSA and urged Gryphon to file its order to show cause on October 4, 2023 so that the parties could coordinate their schedule to appear in Court at a mutually convenient time. *See* Ex. 15 at 4 ("I am writing to inform you that Sphere is no longer willing to guarantee that it will not terminate the MSA. As such, given your prior representations that you would seek emergent relief in that situation and in the interest of a coordinated schedule, we should schedule the TRO hearing for tomorrow at a mutually convenient time.").

The parties again spoke on October 4, 2023, during which time Sphere indicated that, if Gryphon wanted to seek emergency relief, now was the time. Gryphon's failure to do so before Sphere canceled the MSA confirms the obvious: Gryphon had no basis to prevent Sphere from terminating the MSA given its rampant misconduct and the absence of any irreparable harm whatsoever.

## VI.   NEXT STEPS

Now that the MSA has been canceled, Gryphon must do the following immediately and in all events by **October 11, 2023**:

- Point the hash rate of all Sphere miners, regardless of where they are hosted (including without limitation at Core Scientific and Coinmint) to Sphere's BitGo wallet through the Sphere pool hosted by Foundry.

- Transfer all Sphere digital assets in the possession, custody, or control of Gryphon, including without limitation any bitcoin held in any wallets utilized for the benefit of Sphere, to Sphere's wallet.

- Transfer all other funds or monies, regardless of form, belonging or otherwise owed to Sphere (including without limitation any fiat currency) to Sphere's bank account.

Sphere will confirm the foregoing wire and wallet instructions by separate email.

Finally, Sphere will work with you constructively on a rational way to handle Sphere's miners held at Core Scientific and Coinmint and provide for an orderly transition.

***

I am available to discuss any of these matters.  Sphere reserves all rights.

Sincerely,

*/s/  Gregory N. Wolfe*

Enclosures

cc:   Desiree Moore, Desiree.Moore@klgates.com
      Andrew Hinkes, Drew.Hinkes@klgates.com